**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JANET D'ANDREA,

    *Plaintiff*,

v.                                             Civil Action No. 19-2821 (TJK)

PARAGON SYSTEMS, INC.,

    *Defendant*.

**MEMORANDUM OPINION**

Plaintiff Janet D'Andrea sues her former employer Defendant Paragon Systems, Inc., for sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964. She asserts that Paragon fired her from her position as a security guard because of her sex and because she filed a charge of discrimination. Paragon moves for summary judgment. For the reasons explained below, the Court will grant the motion.

**I.    Factual Background**

In May 2013, Paragon hired D'Andrea to work as a security guard, a position in which she served until her termination in June 2018. ECF No. 18-2 ¶ 1. The events that directly led to her termination began on May 7, 2018. At that time, D'Andrea worked at the U.S. Department of Homeland Security on Paragon's contract for security services at its St. Elizabeth campus site. *Id.* ¶ 2. When she got to work that evening, she parked in an adjacent parking garage operated by the U.S. Coast Guard. Her supervisor, Lieutenant Phillips, told her she could not park there and had to park elsewhere. ECF No. 18-1 at 7. D'Andrea told him that Federal Protective Services Officer Kenny Wheeler had told her she could park in the garage and that she would ask Wheeler if there was an issue. *Id.* Wheeler told her to leave her car in the parking lot and that he

would let Phillips know her parking there was not a problem. *Id.* When D'Andrea returned to Paragon's security office to receive her gear for her shift, Phillips told her he would not "gear her up" unless she moved her vehicle to another parking lot. *Id.* D'Andrea complied with this instruction and began her shift. *Id.*

During that shift, D'Andrea called another supervisor, Lieutenant Tyler Vickers. According to a memorandum Vickers submitted to Phillips, D'Andrea complained to him about her post assignment that night, used profanity while upset, and used a government-issued keyboard to strike a metal desk inside her post. ECF No. 17-6 ¶¶ 11–14. D'Andrea denies Vickers's version of events. ECF No. 18-1 at 8–9. Shortly before the end of her shift, D'Andrea noticed that the screen on her security monitor was malfunctioning. Even though Paragon's protocol required that she make an entry in the station's log book, she did not do so. ECF No. 18-2 ¶¶ 20–21. She did, however, inform the incoming security officer about the malfunction and then left her station. *Id.* ¶ 21.

On May 9, Paragon's Deputy Project Manager at St. Elizabeth's, Stacy Coombs, told D'Andrea that he and Major Michaelangelo Jenkins wanted to have a discussion with her. ECF No. 18-1 at 9. D'Andrea, who had just completed an eight-hour shift, told Coombs that she "had to use the restroom," "was not feeling well," and "had to go home," and suggested speaking the next day. *Id.* at 9–10. Coombs told D'Andrea to come back after using the restroom but D'Andrea excused herself and left the work site. *Id.* at 10. The next day, Lieutenant Brian Jones emailed Coombs and accused D'Andrea of causing the computer screen malfunctions at her post, based on the report of another security guard. ECF No. 18-23 at 2. About a week later, on May 16, Paragon suspended D'Andrea for failure to follow instructions when she did not return to speak to Coombs and Jenkins. ECF No. 17-4 at 60.

On June 1, 2018, D'Andrea filed a charge of discrimination with the District of Columbia Office of Human Rights and the Equal Employment Opportunity Commission (EEOC), in which she alleged that Paragon had harassed and suspended her because of her sex in violation of Title VII of the Civil Rights Act of 1964. *Id.* at 54. Five days later, D'Andrea received a letter from Paragon informing her that an investigation "revealed that on May 9, 2018 you were given a direct order to meet with the Deputy Program Manager and Major to discuss incidents that occurred during your prior shifts. You failed to follow the instruction given and departed the facility without notification, delaying an official investigation." *Id.* at 60. Moreover, the "investigation revealed that throughout the course of your shifts you were unprofessional towards your supervisors on more than one occasion, used profanity while on duty, failed to follow proper reporting procedures and failed to document all incidents." *Id.* Noting that she had been disciplined before for "incidents of this nature," the letter terminated D'Andrea's employment with Paragon. *Id.*

In November 2018, D'Andrea amended her EEOC complaint to allege that she was "retaliated against for my protected activities (filing a charge of discrimination)". ECF No. 1 ¶ 8; ECF No. 5 ¶ 8; ECF No. 18-26 at 2.

## II. Procedural Background

D'Andrea sued in September 2019. Her complaint alleges two counts: (1) sex discrimination and (2) retaliation, each in violation of Title VII. ECF No. 1 ¶¶ 31–44. In February 2021, Paragon moved for summary judgment on both counts. ECF No. 17 at 1. Paragon's reply included a request to exclude from the record three exhibits that D'Andrea had

only recently produced to it. The Court allowed D'Andrea to file a surreply and Paragon to file a reply to the surreply about this evidentiary dispute.[1]

## III. Legal Standard

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). To survive summary judgment, a plaintiff must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation omitted). Courts "are not to make credibility determinations or weigh the evidence." *Lopez*, 826 F.3d at 496 (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)). But the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)) (emphasis in original). If the evidence "is merely colorable, or is

---

[1] Paragon argues D'Andrea's failure to produce Exhibits 15, 22, and 23 until summary judgment briefing warrants excluding those exhibits from consideration. Federal Rule of Civil Procedure 37(c) provides that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Because the Court finds that Paragon prevails on its motion for summary judgment, the late disclosure of these documents was harmless, and so the Court will not exclude them.

not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

"The movant bears the initial burden of demonstrating that there is no genuine issue of material fact." *Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017). "In response, the nonmovant must identify specific facts in the record to demonstrate the existence of a genuine issue." *Id.* And for claims where the non-movant bears the burden of proof at trial, as here, she must make an evidentiary showing "sufficient to establish the existence of [each] essential element to [her] case." *Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and therefore entitles the moving party to "judgment as a matter of law." *Id.* at 323. "Importantly, while summary judgment must be approached with specific caution in discrimination cases, a plaintiff is not relieved of his obligation to support his allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Pollard v. Quest Diagnostics*, 610 F. Supp. 2d 1, 17 (D.D.C. 2009) (cleaned up).

**IV. Analysis**

    **A. Discrimination Claim**

Title VII prohibits employment discrimination based on sex. 42 U.S.C. § 2000e-2(a)(1). Courts analyzing Title VII discrimination claims use the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Morris v. McCarthy*, 825 F.3d 658, 668 (D.C. Cir. 2016). Under that framework, "an employee must first make out a prima facie case of retaliation or discrimination. The employer must then come forward with a legitimate, nondiscriminatory or non-retaliatory reason for the challenged action. If the employer meets this burden, the *McDonnell Douglas* framework falls away and the factfinder must decide the ultimate question: whether the employee has proven intentional discrimination or retaliation."

5

*Id.* (citations omitted).  But when an employer has "asserted a legitimate, non-discriminatory reason for the decision," the Circuit has instructed courts to proceed to resolve the "central question"; has the plaintiff "produced sufficient evidence for a reasonable jury to find that [Paragon's] asserted non-discriminatory reason was not the actual reason and that [it] intentionally discriminated against [D'Andrea] on the basis of [sex]?"  *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).  Because Paragon asserts that it fired D'Andrea for the non-discriminatory reasons set forth in the termination letter, the Court will move on to resolve this central question.

D'Andrea argues that she was fired due to sex discrimination.  ECF No. 18-26 at 2.  And as more evidence of Paragon's animus, she cites Paragon's previous disciplinary actions toward her and alleged harassment by certain Paragon employees.[2]  ECF No. 18-1 at 12–13, 15–17.  She also disputes some aspects of the events that led to her termination.  *Id.* at 13–15

D'Andrea has not produced sufficient evidence for a reasonable jury to find for her on her sex discrimination claim.  For starters, whether Paragon's conclusions about D'Andrea's actions in May 2018 were correct is beside the point; what matters is whether Paragon believed the reasons for firing her that it outlined in her termination letter.  *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996).  And nothing in the record suggests that it did not.  Indeed, D'Andrea does not dispute the key allegations in the letter.  For example, she does not dispute that at the beginning of her shift on May 7, her computer monitor was working and, by

---

[2] D'Andrea's EEOC charge also alleged that Paragon discriminated against her by allowing male employees to park in the Coast Guard parking lot.  And in her complaint, she alleged that generally, Paragon did not extend to her the same "privileges of employment" as male employees.  But she does not argue that the denial of parking privileges, or any other alleged differential treatment, amounted to an adverse employment action.  Thus, she has waived any such argument.  *See also Leach v. Nat'l Railroad Passenger Corp.*, 128 F. Supp. 3d 146, 157 (D.D.C. 2015) (denial of parking privilege is not an adverse employment action).

the end of her shift, it was not working, and that she did not properly record the malfunction in the station log as required. While she disputes the accuracy of Vickers's memorandum, she does not dispute that Vickers submitted a report describing her behavior that night. And she does not dispute that she disobeyed Coombs's instruction to meet with him and Jenkins on May 9 by leaving the work site. To the extent that D'Andrea otherwise tries to defend her behavior, her "attempt to characterize her own behavior as fully justified has nothing to do with [] gender and thus provides no basis for any inference that her supervisors' response to her insubordination was discriminatory." *Beshir v. Jewell*, 961 F. Supp. 2d 114, 127 (D.D.C. 2013); *see also Drewrey v. Clinton*, 763 F. Supp. 2d 54, 63 (D.D.C. 2011) ("An employee's insubordination and his failure to perform his duties are legitimate, nondiscriminatory reasons for adverse employment actions.").

Nor has D'Andrea identified a similarly situated male comparator who Paragon treated differently than her. "In this Circuit, comparators must have been charged with offenses of comparable seriousness and all of the relevant aspects of their employment situations must have been nearly identical." *Burley v. Nat'l Passenger Rail Corp.*, 33 F. Supp. 3d 61, 73 (D.D.C. 2014) (cleaned up). "Factors relevant to this inquiry include 'whether the alleged comparators dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (quoting *Kassim v. Inter-Continental Hotels Corp.*, 997 F. Supp. 2d 56, 63 (D.D.C. 2013)). No one D'Andrea proposes fits the bill. For example, while she claims other male employees used profanity at work without punishment, she does not make any claim that they did so in exasperation or while in a heated discussion with a supervisor as Vickers's report reflected. ECF No. 18-1 at 14. Nor was using

profanity the sole reason that Paragon fired D'Andrea. And importantly, because D'Andrea fails to identify the person at Paragon who decided to fire her—the person who was allegedly motivated by discriminatory animus—she has not shown that person treated any other proposed comparator differently. *See Evans v. Dist. of Columbia*, 219 F. Supp. 3d 99, 110 (D.D.C. 2016) (finding proposed comparator inadequate because plaintiff failed to identify individual who approved plaintiff's termination).[3]

Finally, D'Andrea argues that her discrimination claim can survive under a cat's-paw theory. "Under a cat's-paw theory, a formal decision maker may be an unwitting conduit of another actor's illicit motives." *Walker v. Johnson*, 798 F.3d 1085, 1095 (D.C. Cir. 2015). "[E]vidence of a subordinate's bias is relevant" in a selection decision "where the ultimate decision maker is not insulated from the subordinate's influence." *Griffin v. Wash. Convention Ctr.*, 142 F.3d 1308, 1312 (D.C. Cir. 1998). To prevail on this theory, a plaintiff must show (1) "a supervisor performs an act motivated by [unlawful] animus," (2) the supervisor intends to "cause an adverse employment action," and (3) "that act is a proximate cause of the ultimate employment action." *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011); *Morris*, 825 F.3d at 668–69 (applying test to Title VII claim). Proximate cause "requires only some direct relation between the injury asserted and the injurious conduct alleged, and excludes only those links that are too remote, purely contingent, or indirect." *Staub*, 562 U.S. at 419.

D'Andrea argues that her termination must have stemmed from information provided by Phillips, Vickers and Coombs, and that she has produced evidence she claims suggests that the three harbored discriminatory animus against her. ECF No. 18-1 at 25. But D'Andrea only

---

[3] D'Andrea notes that Bryttany Gardner, Employee Relations Specialist, signed her termination letter but she does not have any proof Gardner was the one who decided to fire her or that Gardner had sex-based animus toward her. ECF No. 18-1 at 25.

provided evidence that *Phillips* treated her poorly; she has no evidence that Vickers or Coombs mistreated her. ECF No. 18-1 at 2, 4–6. And the record lacks evidence that Phillips had any role in the investigation that led to D'Andrea's firing. Moreover, even if Phillips had participated in the investigation, D'Andrea has produced no evidence that Phillips influenced the person who decided to fire her or how he did so—in part, because she has not even identified the decision maker. Thus, D'Andrea cannot sustain her cat's-paw theory.

### B.     Retaliation Claim

D'Andrea's retaliation claim also fails. "Under Title VII, it is unlawful for an employer to retaliate against any of its employees because she has made a charge or participated in any manner in an investigation of discrimination." *Hairston v. Vance-Cooks*, 773 F.3d 266, 275 (D.C. Cir. 2014) (quoting *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009)). "A *prima facie* showing of retaliation requires that '(1) the plaintiff engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action.'" *Id.* (quoting *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012).

Paragon first argues that D'Andrea did not administratively exhaust her retaliation claim by including it in her EEOC charge. Under Title VII, a plaintiff must timely exhaust her administrative remedies before bringing an action in federal court. *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010). "A plaintiff fails to exhaust administrative remedies when the complaint she files in federal court includes a claim that was not raised in the administrative complaint." *Mogenhan v. Shinseki*, 630 F. Supp. 2d 56, 60 (D.D.C. 2009). To do so, the plaintiff must provide an agency "'sufficient information' to put the agency on notice of the claim and to 'enable the agency to investigate' it." *Crawford v. Duke*, 867 F.3d 103, 109 (D.C. Cir. 2017) (citation omitted). This exhaustion requirement is not a "mere technicality," but

9

"serves the important purposes of giving the charged party notice of the claim and narrow[ing] the issues for prompt adjudication and decision." *Latson v. Holder*, 82 F. Supp. 3d 377, 384 (D.D.C. 2015) (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)). D'Andrea exhausted her claim. As Paragon admits, she amended her EEOC charge in November 2018 to include her retaliation allegation. ECF No. 5 ¶ 8; ECF No. 18-26 at 2.

Paragon's second argument fares better than its first. Paragon points out that though D'Andrea filed her EEOC charge on June 1, 2018, and Paragon terminated her five days later, Paragon did not learn about her EEOC charge until June 21, 2018. ECF No. 18-2 ¶ 36. D'Andrea concedes this timeline. *Id.* "It is hard to argue that [Paragon] punished plaintiff *because* of plaintiff's protected activity, if [Paragon] was completely *unaware* of plaintiff's protected activity." *Dudley v. WMATA*, 924 F. Supp. 2d 141, 182 (D.D.C. 2013). This timing forecloses any causal connection between D'Andrea's EEOC filing and her termination.

Changing tack, D'Andrea also argues her retaliation claim stems from other protected activities—mostly complaints to her union representative about her treatment—that she engaged in months earlier, from January 2018 until March 2018. ECF No. 18-1 at 20. But she did not mention these activities in her complaint, in which she tied her claim of retaliation to her filing of the EEOC charge. *See* ECF No. 1 ¶ 27 (alleging investigation was "pretext for retaliatory animus harbored against Ms. D'Andrea as a result of her complaint to the EEOC"). It is "well-established in this district that a plaintiff cannot amend his complaint in an opposition to . . . summary judgment." *Dun v. Transamerica Premier Life Insurance Co.*, 442 F. Supp. 3d 229, 240 (D.D.C. 2020) (quoting *Jo v. Dist. of Columbia*, 582 F. Supp. 2d 51, 64 (D.D.C. 2008)). Because D'Andrea did not plead that her retaliation claim stemmed from these prior protected activities, the Court need not consider them in relation to this claim. *See Harrison v. Office of*

*Architect of Capitol*, 964 F. Supp. 2d 81, 95 n.4 (D.D.C. 2013) (declining to address "theories of retaliation not set forth in the Complaint").  And in any event, D'Andrea failed to exhaust a claim of retaliation based on these protected activities, which she did not include in her amended EEOC charge; there, she alleged only that she was "retaliated against for my protected activities (filing a charge of discrimination)."  ECF No. 18-26 at 2.

Thus, because D'Andrea cannot show a causal link between filing her EEOC charge and Paragon's decision to terminate her, summary judgment is appropriate for Paragon on her retaliation count as well.

## V.  Conclusion

For all these reasons, the Court will grant Paragon's motion for summary judgment.  A separate order will issue.

/s/ Timothy J. Kelly<br>
TIMOTHY J. KELLY<br>
United States District Judge

Date: September 30, 2021